UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                              :

**JUAN GABRIEL CAYAMCELA CACERES**,

                   Petitioner,       :

                              :    **MEMORANDUM DECISION**
                – against –          :    **AND ORDER**

                              :    26-CV-3759 (AMD)

**MARKWAYNE MULLIN**, in his Official
Capacity, Secretary of the U.S. Department of    :
Homeland Security; **TODD BLANCHE**, in his
Official Capacity, Acting Attorney General of the    :
United States; and **TODD M. LYONS**, Senior
Official Performing the Duties of the Director,     :
U.S. Immigration and Customs Enforcement,

                              :

                   Respondents.    :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On June 20, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and

detained the petitioner, who is currently being held in the Metropolitan Detention Center

("MDC") in Brooklyn, New York. (ECF No. 1 ¶ 1; ECF No. 7-1 ¶ 16.) The petitioner seeks a

writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court denies the

petition, as explained below.

### BACKGROUND[1]

The petitioner is a citizen of Ecuador. (ECF No. 1 ¶ 5.) He entered the United States

"[o]n or about July 15, 2013" near Naco, Arizona. (ECF No. 7 at 1.) United States Border Patrol

---

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties'
submissions, including exhibits. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025);
*Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

The Court has reviewed all the submissions and finds that the petition "present[s] only issues of law."
Accordingly, the Court can decide the petition without a hearing. *See* 28 U.S.C. § 2243 (directing courts

("USBP") "encountered" and arrested the petitioner.  (*Id.* at 1.)  On July 16, 2013, USBP issued

him a Form I-860, Notice and Order of Expedited Removal and Form I-296, Notice to Alien

Ordered Removed/Departure Verification.  (*Id.* at 1–2.)  The petitioner "subsequently claimed

fear," and on August 7, 2013, he was served with a Notice to Appear ("NTA") Form 1-862

charging him with removability pursuant to Immigration and Naturalization Act ("INA") §

212(a)(7)(A)(i)(I).  (*Id.* at 2; *see also* ECF No. 7-5.)  On August 9, 2013, he was released on

recognizance under an Order of Release on Recognizance ("OREC").  (ECF No. 7 at 2; *see also*

ECF No. 7-6.)

On November 4, 2013, the Department of Homeland Security ("DHS") initiated removal

proceedings against the petitioner by filing the NTA with the Executive Office of Immigration

Review ("EOIR").  (ECF No. 7 at 2.)  On July 18, 2014, the petitioner appeared with counsel at a

master calendar hearing at an immigration court in New York.  (*Id.*)  An immigration judge ("IJ")

sustained the charge of removability.  (*Id.*)  The petitioner subsequently filed an "application for

relief from removal" with the EOIR.  (*Id.*)  On April 20, 2016, the petitioner did not appear for a

scheduled merits hearing, and an IJ ordered him removed *in absentia*.  (*Id.*)  The petitioner did

not appeal the removal order.  (*Id.*)  "In or about 2023," the petitioner's mother, who is a lawful

permanent resident, filed a Form I-130 Petition for Alien Relative on the petitioner's behalf.

(ECF No. 1 ¶ 12.)  The Form I-130 is pending before U.S. Citizenship and Immigration Services

("USCIS").  (*Id.*)

On June 20, 2026, ICE officers were "reviewing DHS databases," and "observed that

Petitioner was issued a removal order on April 20, 2016 by an IJ, which was not appealed at any

---

to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025).

2

time." (ECF No. 7 at 2.)  The officers issued a Form I-205 Warrant of Removal/Deportation and later that day, ICE's Long Island Fugitive Operations team "conducted a targeted enforcement action in East Meadow, New York, searching for Petitioner as the primary target." (*Id.*)  ICE officers "observed a male matching the physical description of the primary target in a nearby vehicle outside the target's residence." (*Id.*)  They "conducted a vehicle stop," identified themselves as ICE officers, and "engaged in a consensual field interview with the driver, who turned out to be Petitioner." (*Id.*)  The officers arrested the petitioner pursuant to the warrant and served him with an OREC revocation notice. (*Id.*; *see also* ECF No. 7-10.)

ICE took the petitioner to the Nassau County ICE intake, and then to the Nassau County Correctional Center in East Meadow, New York. (ECF No. 7-1 ¶¶ 13–14.)  On June 22, 2026, ICE transferred the petitioner from the Nassau County Correctional Center to Delaney Hall Detention Facility in Newark, New Jersey. (*Id.* ¶ 15.)  On June 24, 2026, ICE transferred the petitioner from Delaney Hall to the MDC, where he is currently detained. (*Id.* ¶ 16.)

The petitioner's counsel filed a petition for habeas relief on June 22, 2026. (ECF No. 1.)  On June 23, 2026, the Court ordered the government to show cause why the petition should not be granted. (*ECF Order dated June 23, 2026.*)[2]  The government responded to the order to show cause on June 29, 2026. (ECF No. 7.)  The petitioner filed a reply on July 2, 2026. (ECF No. 8.)

After the petitioner filed the petition, he moved to reopen his removal proceedings in immigration court. (ECF No. 8 at 10.)  He also filed a "skeletal application for cancellation of removal under INA § 240A(b)." (*Id.*)  His partner, a U.S. citizen who is pregnant with his child, also intends to "immediately file a Form I-130 Petition for Alien Relative on his behalf." (*Id.*)

---

[2] To preserve the Court's jurisdiction over the petition, the Court also ordered that "the petitioner shall not be removed from the United States unless and until the Court orders otherwise." (*ECF Order dated June 23, 2026.*)

**LEGAL STANDARD**

Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

**DISCUSSION**

The parties agree that the petitioner is detained pursuant to 8 U.S.C. § 1231. (*See* ECF No. 7 at 3; ECF No. 8 at 9.)[3]  The petitioner argues that his detention is unlawful under Section 1231, and that it "independently violates the Due Process Clause." (ECF No. 1 ¶¶ 26–30; ECF No. 8 at 5–9.)  He asks the Court to "restrain[]" the government "from removing him from the United States pending adjudication of his removal proceedings, if any" and "requests to be released from detention pending resolution of his immigration proceedings, if any." (ECF No. 1 ¶¶ 43, 45.)  Because the petitioner has filed a motion to reopen his removal proceedings and an application for cancellation of removal in immigration court, he also asks the Court to "[m]aintain[] the status quo for the brief period necessary to allow these statutory remedies to be presented." (ECF No. 8 at 10.)  The government argues that the Court lacks jurisdiction to hear

---

[3] The petitioner initially argued that his detention was also unlawful under 8 U.S.C. §§ 1225, 1226 and under *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026). (*See* ECF No. 1 ¶¶ 19–25.)  The petitioner withdrew this argument "[i]n light of Respondents' clarification that Petitioner is held under 8 U.S.C. § 1231(a) rather than § 1225(b)(2)(A)." (ECF No. 8 at 9.)

4

the petition, and that even if it did have jurisdiction, the petitioner's detention is lawful under

Section 1231(a)(6).  (ECF No. 7 at 3–10.)[4]

"Under 8 U.S.C. § 1252, which governs and constrains judicial review of a final order of

removal, federal district courts retain very limited subject-matter jurisdiction to review

challenges to orders of removals."  *Lin v. Borgen*, No. 25-CV-5618, 2025 WL 2158874, at *3

(S.D.N.Y. July 30, 2025).  Section 1252(a)(5) provides that "[n]otwithstanding any other

provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate

court of appeals in accordance with this section shall be the sole and exclusive means for judicial

review of an order of removal entered or issued under any provision of this chapter."  8 U.S.C. §

1252(a)(5).  And under Section 1252(b)(9), "[j]udicial review of all questions of law and fact,

---

[4] Although the parties do not address whether the petitioner's detention at Delaney Hall on the day he filed the petition affects the Court's subject matter jurisdiction, the Court has an "independent duty" to confirm that it has subject matter jurisdiction over the petition.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.")  For a court to "entertain a habeas petition," the petition must (1) "be filed in the district of confinement" and (2) "name the petitioner's immediate custodian."  *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025).  "As to the first question — when the district of confinement is determined — the only guidance the Supreme Court or the Second Circuit have provided is that the appropriate district is where the petitioner is present at the time of filing."  *Flores-Linares v. Bondi*, No. 26-CV-298, 2026 WL 179208, at *2 (E.D.N.Y. Jan. 22, 2026). However, "[w]here a custodian is unknown, a petitioner is permitted to rely on the reasonable information available and sue the ascertainable respondent, even if it later turns out to be erroneous." *Id.* at *4.  The petitioner's counsel filed his habeas petition on June 22, 2026, the same day ICE transported the petitioner from the Nassau County Correctional Center to Delaney Hall in New Jersey. (*See* ECF No. 1; ECF No. 7-1 ¶ 15.)  At that time, the ICE Online Detainee Locator listed the petitioner's "Current Detention Center" as "Call ICE for details."  (ECF No. 1-1.)  Counsel thought that the petitioner was being held at 535 Federal Plaza in Central Islip, New York.  (ECF No. 1 ¶ 1.)  Nothing in the record shows the time that ICE transferred the petitioner from this district to Delaney Hall in New Jersey.  Under these circumstances, the unknown-custodian exception applies.  *See Valdes Acevedo v. Nassau Cnty. Corr. Ctr.*, No. 26-CV-25, 2026 WL 184645, at *2 (E.D.N.Y. Jan. 24, 2026) (applying unknown-custodian exception where the petitioner "was held in an undisclosed location by an unknown custodian when the Petition was filed, making it impossible to determine the district of her confinement — the precise circumstances recognized to warrant application of what is known as the 'unknown-custodian exception' to the district-of-confinement rule").  Accordingly, the petitioner's detention at Delaney Hall does not divest the Court of subject matter jurisdiction.

including interpretation and application of constitutional and statutory provisions, arising from

any action taken or proceeding brought to remove a [noncitizen] from the United States under

this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9).

This "zipper clause is meant to 'consolidate judicial review of immigration proceedings into one

action in the court of appeals.'" *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 223 (2020) (quoting

*INS v. St. Cyr*, 533 U.S. 289, 313 (2001)).[5]  Finally, Section 1252(g) states that "no court shall

have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision

or action by the Attorney General to commence proceedings, adjudicate cases, or execute

removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

The Second Circuit has held that Section 1252(a)(5) "clearly preclude[s] the district

court's entertaining of a direct challenge to a removal order." *Delgado v. Quarantillo*, 643 F.3d

52, 55 (2d Cir. 2011).  Moreover, "section 1252(a)(5)'s jurisdictional bar applies equally to

preclude . . . an indirect challenge." *Id.*  "[W]hether the district court has jurisdiction will turn on

the substance of the relief that a plaintiff is seeking." *Id.*  "Consistent with *Delgado*, district

courts in this circuit routinely hold that they lack jurisdiction to stay orders of removal."

*Villatoro v. Noem*, No. 25-CV-5306, 2025 WL 2880140, at *3 (E.D.N.Y. Oct. 9, 2025) (collecting

cases); *see also Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 225 (S.D.N.Y. 2019)

---

[5] While the petition was pending, the Second Circuit decided *Mahdawi v. Trump*, No. 25-1113, 2026 WL 2090981 (2d Cir. July 21, 2026).  Asserting that "the Government unlawfully targeted him for removal based on First Amendment protected speech," Mahdawi asked the district court to vacate and set aside Secretary of State Marco Rubio's determination that Mahdawi was removable because he threatened American foreign policy, as well as the government's "alleged policy of targeting noncitizens for removal based on First Amendment protected speech advocating for Palestinian rights." *Mahdawi*, 2026 WL 2090981, at *7 (citation modified).  The district court granted his motion for release pending review of the habeas petition.  *See id.* at *1.  The Second Circuit held that the district court lacked jurisdiction to consider the petition because Section 1252(b)(9) "channels judicial review of removal-related questions into a single [petition for review] of a final order of removal." *Id.* at *6.

(noting that since *Delgado,* courts "have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction").  District courts have also determined that they lack jurisdiction to grant relief that would leave the government "without a mechanism to enforce the removal order." *Nieto-Ayala v. Holder*, No. 08-CV-8347, 2011 WL 3918156, at \*3 (S.D.N.Y. Aug. 30, 2011).

The petitioner argues that he "does not seek to reopen, vacate, or invalidate his April 20, 2016 in absentia removal order," but instead "challenges the constitutionality of Respondents' decision to deprive him of his liberty after more than twelve years of openly residing in the United States following his release on recognizance, without any individualized determination that detention had become necessary." (ECF No. 8 at 3.)  But the petitioner asks the Court to release him from custody "pending resolution of his immigration proceedings" and to "restrain[] [the government] from removing him from the United States pending adjudication of his removal proceedings" because "[p]remature removal would preclude him from pursuing the forms of relief for which he may be eligible and would undermine his ability to seek protection under applicable immigration laws." (ECF No. 1 ¶¶ 42-43.)  He also argues that the Court should not vacate its June 23, 2026 order prohibiting the government from removing the petitioner because he now has a motion to reopen his removal proceedings and an application for cancellation of removal pending in immigration court, and "premature removal would irrevocably foreclose Petitioner's ability to pursue them in a meaningful manner." (ECF No. 8 at 9–10.)

Under these circumstances, the Court concludes that the petitioner is indirectly challenging his order of removal.  The petitioner asks the Court to stay his removal.  And while his detention is not mandatory under Section 1231, he is nonetheless detained pursuant to Section 1231 so that he can be removed from the country.  Accordingly, the Court does not have

jurisdiction over the petition.  *See Sauceda Henriquez v. Noem*, No. 25-CV-7023, 2026 WL 111665, at *4 (E.D.N.Y. Jan. 15, 2026); *Borgen*, 2025 WL 2158874, at *4.[6]

The Court would not grant the petition even if it had jurisdiction, because the petitioner's arguments fail on the merits.  "Section 1231 establishes a 90-day 'removal period' within which the government must effectuate a removal order after it becomes final and during which the government 'shall' detain the noncitizen until such removal."  *Romero v. Noem*, No. 26-CV-1884, 2026 WL 775847, at *3 (S.D.N.Y. Mar. 19, 2026) (quoting *Singh v. Francis*, No. 26-CV-344, 2026 WL 507890, at *2 (E.D.N.Y. Feb. 24, 2026)).  "The removal period begins on the latest of three dates set forth in Section 1231, including, as relevant here, '[t]he date the order of removal becomes administratively final.'"  *Id.* (quoting 8 U.S.C. § 1231(a)(1)(B)(i)).  "After the 90-day removal period expires, section 1231(a)(6) provides that three classes of persons may be detained beyond the removal period."  *Id.* (quoting *Gualpa-Mizhquiri v. Francis*, No. 26-CV-156, 2026 WL 396081, at *2 (S.D.N.Y. Feb. 12, 2026)).  If the government decides to release these noncitizens instead of continuing to detain them, they are subject to terms of supervision.  *See* 8 U.S.C. § 1231(a)(6).

The petitioner's removal order became administratively final on April 20, 2016, the day the IJ issued the petitioner's removal order *in absentia*.  *See Lin v. Francis*, No. 25-CV-10001,

---

[6] In *Lin v. Francis*, No. 25-CV-10001, 2025 WL 3751855 (S.D.N.Y. Dec. 29, 2025), Judge Paul Engelmayer concluded that the court had jurisdiction to consider a habeas petition filed by a non-citizen challenging his detention years after he was ordered removed *in absentia*.  The court explained that Section 1252 did not bar the court from adjudicating the habeas petition because the petitioner "challenge[d] the manner of his detention—*i.e.*, that he was detained 'without notice,'" and "d[id] not attack, directly or indirectly, any decision by immigration authorities to 'commence proceedings, adjudicate cases, or execute removal orders.'"  *Lin v. Francis*, 2025 WL 3751855, at *3 (quoting 8 U.S.C. § 1252(g)).  The court emphasized that the petitioner "d[id] not attack, even indirectly, the validity of his final removal order."  *Id.* at *3 n.3.  Here, the petitioner is indirectly attacking his removal order.

2025 WL 3751855, at *1 (S.D.N.Y. Dec. 29, 2025) (citing 8 C.F.R. § 1241.1(e)). Therefore, because the 90-day period expired in 2016, his detention is governed by 1231(a)(6). "Complicating somewhat the analysis in this case, however, is that the Petitioner was not detained during the ninety-day removal period or immediately after its expiration." *Piao v. Lyons*, No. 25-CV-1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025). Citing *Diallo v. Joyce*, 817 F. Supp. 3d 202, 203–04 (S.D.N.Y. 2025), which he claims is "materially indistinguishable" from this case, the petitioner argues that "§ 1231(a)(6) supplies no statutory authority for his June 2026 arrest and continued detention" because he was not detained immediately following the 90-day period. (ECF No. 8 at 5–7.) Although Diallo was "subject to an order of removal from back in 2012, the immigration judge on her case withheld her removal to Guinea, based on proof that she would be persecuted there based on her gender and politics." *Diallo*, 817 F. Supp. 3d at 203–04. Immigration authorities had also granted her I-130 petition, "the first step in the process to gain lawful permanent resident status." *Id.* at 204. In the thirteen years between the issuance of the removal order and her arrest, "the government ha[d] made no effort to remove Diallo from the country and has no place to send her to." *Id.* Judge Arun Subramanian held that Diallo's detention was not lawful under Section 1231(a)(6), because that provision does not give the government "a free-roaming right to arrest and detain people any time it sees fit, even a decade after the fact." *Id.* at 205. But as Judge Margaret Garnett noted in *Romero*, the *Diallo* court "explicitly noted that 'nothing in the Court's holding says that the government may not remove [the petitioner] or that, if removal were *imminent*, the government could not briefly detain [the petitioner] for purposes of effecting that removal,' given that some form of detention may be 'implicit in the concept of removal itself.'" *Romero*, 2026 WL 775847, at *3 (quoting *Diallo*, 817 F. Supp. 3d at 208). "Nevertheless, such circumstances did not exist

9

in *Diallo* because the government had not shown whether removal was even possible given [the petitioner's] withholding of removal, nor could it say when [the petitioner] would be removed." *Id.*

The facts in this case are different.  The petitioner was not granted withholding of removal to Ecuador.  The government claims that ICE has the petitioner's expired Ecuadorian passport and birth certificate, that "Ecuador accepts their nationals and citizens with any copy of national identification document(s) regardless of expiration dates" and that "[t]his Court's Order dated June 23, 2026, prohibiting ICE from removing Petitioner, is presently the sole impediment from removal."  (ECF No. 7 at 3.)  Other courts presented with similar facts have concluded that Section 1231(a)(6) permits the government to detain non-citizens like the petitioner who were ordered removed *in absentia* years after the 90-day period elapsed.  For example, in *Lin v. Francis*, Judge Engelmayer concluded that the government had authority under Section 1231(a)(6) to detain a noncitizen who was ordered removed *in absentia* because he had not appeared for his removal hearing and "there [wa]s no basis to treat him as having been accessible to ICE, such that it could have removed him during the ensuing 90 days."  2025 WL 3751855, at *4; *see also Romero*, 2026 WL 775847, at *5 ("The better reading is that Section 1231(a)(6)'s plain text provides the Government with discretionary authority to take inadmissible noncitizens into custody after the initial removal period expires, particularly in cases, like this one, where the noncitizen was not initially detained during the removal period because he absconded or otherwise failed to comply with the directives of immigration authorities."); *Gualpa-Mizhquiri*, 2026 WL 396081, at *3 (finding detention under Section 1231(a)(6) lawful where the petitioner "failed to appear for his hearing, violated his bond conditions, and absconded when ICE issued a Warrant of Removal during the removal period").

10

Judge Subramanian declined to follow *Lin* in two cases. *See Chen v. Noem*, No. 26-CV-1109, 2026 WL 380712 (S.D.N.Y. Feb. 11, 2026); *Singh v. Acting Field Off. Dir.*, No. 26-CV-425, 2026 WL 1536877 (S.D.N.Y. June 1, 2026). Judge Subramanian emphasized that Chen and Singh had been in recent, regular contact with ICE. *See Chen*, 2026 WL 380712, at *1 (noting that the year before Chen was arrested and detained, her son filed an I-130 petition on her behalf and she had applied for a green card, and that she was arrested when she appeared for a scheduled adjustment-of-status interview); *Singh*, 2026 WL 1536877, at *1 (noting that Singh "has been accessible to the government since at least 2020," and that the government "concede[d] that they have known of petitioner's current address for at least six years (and potentially had access for even longer")).[7] The petitioner in this case also has a pending I-130 petition that his mother filed three years ago, and the government's filings suggest that the petitioner's address was readily available to ICE. However, there is nothing in the record to suggest that the petitioner was accessible to ICE when he became subject to removal. Accordingly, the Court finds that his detention is not unlawful under Section 1231.

The petitioner argues that "[e]ven if § 1231(a)(6) supplies statutory authority here, Petitioner's detention independently violates the Due Process Clause." (ECF No. 8 at 7.) He claims that "[n]othing in the record indicates that Respondents assessed criminal activity or flight risk as a reason to detain him," and that ICE arrested him "without first having made an individualized determination as to whether detention was proper." (*Id.* at 8–9.) However, a noncitizen like the petitioner who is "ordered removed" and "is inadmissible under section 1182" may be detained under Section 1231(a)(6) whether or not the government has determined that he

---

[7] Judge Subramanian observed that "limited detention might be necessary to effectuate an imminent removal, so the statutes governing removal may grant implied permission to detain someone to effectuate that removal." *Singh*, 2026 WL 1536877, at *1. As noted above, the government asserts that the Court's June 23, 2026 order is the only impediment to removal. (ECF No. 9 at 1; ECF No. 7 at 3.)

11

is a risk to the community or unlikely to comply with an order of removal.  *See* 8 U.S.C. § 1231(a)(6); *see also Romero*, 2026 WL 775847, at *3 ("'After the 90-day removal period expires, section 1231(a)(6) provides that three classes of persons may be detained beyond the removal period,' including, as relevant here, noncitizens who are 'inadmissible.'" (quoting *Gualpa-Mizhquiri*, 2026 WL 396081, at *2)).

The petitioner cites *Funes v. Francis*, 810 F. Supp. 3d 472 (S.D.N.Y. 2025) and *Zhu v. Genalo*, 798 F. Supp. 3d 400 (S.D.N.Y. 2025) for the proposition that he is entitled to an "individualized determination."  (ECF No. 8 at 7.)  But the petitioners in those cases were released at the end of the 90-day period, subject to conditions, under Section 1231(a)(3).  *See Funes*, 810 F. Supp. 3d at 489; *Zhu*, 798 F. Supp. 3d at 408.  The government violated their due process rights because it did not follow the procedural requirements prescribed by the regulations that govern the revocation of orders of supervision.  *See Funes*, 810 F. Supp. 3d at 499; *Zhu*, 798 F. Supp. 3d at 414–15.  Section 1231(a)(3) and the corresponding regulations "do not apply to [the petitioner], whom ICE had not previously detained and who therefore was not released on supervision."  *Lin*, 2025 WL 3751855, at *4.[8]  The petitioner has not identified any other basis for his due process claim, and it "cannot succeed under the theory that an administrative agency must follow its own established rules and procedures, given 'the Court's finding that ICE — on the record at hand — did not breach any statute or regulation.'"  *Romero*, 2026 WL 775847, at *6.

That does not mean that the petitioner is not entitled to due process.  *See id.* ("Petitioner's detention is thus statutorily authorized, but it still must comport with applicable due process

---

[8] The petitioner was released on his own recognizance, subject to an OREC.  (*See* ECF No. 7 at 2; *see also* ECF No. 7-6.)  But that was before the IJ entered the final order of removal.

guarantees (citing *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001)). In *Zadvydas v. Davis*, the Supreme Court held that detention pursuant to Section 1231(a)(6) is "presumptively reasonable" for six months. *Zadvydas*, 533 U.S. at 701. The petitioner has been detained for less than three weeks, so his detention is presumptively reasonable. *See Lin*, 2025 WL 3751855, at *5 (rejecting due process claim where the petitioner "d[id] not claim that the duration of his detention (three-plus weeks, to date) exceeds the period reasonably necessary to effect his removal from the United States. It clearly does not." (citation modified)).[9]

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF No. 1, is denied. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
July 22, 2026

---

[9] The petitioner's suspension clause claim (*see* ECF No. 1 ¶ 41) is "likewise dismissed as Petitioner brought this petition for a writ of habeas corpus, and this Court is exercising its jurisdiction to adjudicate the claims raised in this Petition. Petitioner cannot maintain in law or fact that the privilege of the writ of habeas corpus has been suspended in this case," *Tenemea v. Noemi*, No. 25-CV-09066, 2026 WL 948309, at *4 (S.D.N.Y. Apr. 8, 2026). *Cf. Romero*, 2026 WL 775847, at *6 ("To the extent that due process entitles Petitioner to judicial review of the lawfulness of his detention, he is receiving it via his habeas petition and this Court's review and determination of that petition.").